

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00432-CV

**IN THE INTEREST OF Z.L.A.** and K.L.A.

From the County Court, Jim Wells County, Texas
Trial Court No. 17-01-56823-CV
Honorable Michael Ventura Garcia, Judge Presiding

Opinion by: Karen Angelini, Justice

Sitting: Karen Angelini, Justice
Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice

Delivered and Filed: November 28, 2018

AFFIRMED

Appellant Father appeals the trial court's order terminating his parental rights to his five-year-old daughter, K.L.A., and his seven-year-old daughter, Z.L.A. On appeal, he argues the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights is in his children's best interest.[1] *See* TEX. FAM. CODE ANN. § 161.001(b)(2). We review the legal and factual sufficiency of the evidence to support the trial court's best interest finding under the standards enunciated in *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009).

Under Texas law, there is a strong presumption that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). And, in determining

---

[1] Appellant Father's parental rights were terminated pursuant to statutory grounds under subsections 161.001(b)(1)(D), (E), (N), and (Q) of the Family Code. Appellant Father does not challenge termination of his parental rights on these statutory grounds.

whether the child's parent is willing and able to provide the child with a safe environment, a court should consider the factors set out in section 263.307 of the Family Code. *See* TEX. FAM. CODE ANN. § 263.307(b). In addition to these statutory factors, in considering the best interest of the child, a court may also consider the nonexclusive list of factors set forth by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013). The *Holley* factors are neither all-encompassing nor does a court need to find evidence of each factor before terminating the parent-child relationship. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Additionally, in determining whether termination of the parent-child relationship is in the best interest of a child, a court may judge a parent's future conduct by his past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

The record in this case reflects family violence and drug abuse in the home. Jocelyn Rodriguez, a caseworker with the Department of Family and Protective Services, testified that the children had been removed from the home in February 2017 due to drug use and family violence.[2] Appellant Father and the children's mother had gotten into an altercation, which was witnessed by the children. According to the caseworker, the children were in danger because they did not have a protective caregiver due to the domestic violence and drug usage. The mother reported that she was using cocaine and had a very bad alcohol problem. Appellant Father tested positive for cocaine. After the children were removed, Appellant Father continued to live with the mother.

The Family Service Plan, which was introduced at trial without objection, indicates that the Department became involved with the family because of allegations of physical neglect and

---

[2] The Department sought termination of parental rights to five children living in the home. The mother of the five children did not appeal the trial court's order terminating her parental rights. The father to three of the children had his rights terminated as to one of the children; his rights to the other two children were not terminated. He did not appeal the trial court's order. Appellant Father is the father to the remaining two children, Z.L.A. and K.L.A., who are the only children the subject of this appeal.

domestic violence. *See In re L.D.*, No. 01-17-00471-CV, 2017 WL 6374663, at \*4 n.2 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (explaining that hearsay reported in the family service plan can be relied upon by factfinder when appellant failed to object to the admission of the plan into evidence at trial). According to the report contained in the Family Service Plan, Appellant Father fled from police due to active warrants. Beer cans were observed inside and outside of the home. Further, the children reported that Appellant Father had assaulted the mother, pushing her through the window. The children appeared dirty and the only running water was from a neighbor's yard. The report further indicates there was extensive Department history with the family, ongoing drug use in the home, criminal activity, and domestic violence in front of the children. Also, the children reported they did not want to return to the home with Appellant Father because he yells at them and uses inappropriate discipline. They indicated they did not feel safe in the home because of drug use.

Although Appellant Father was represented by counsel, he did not attend the termination hearing due to his incarceration. Appellant Father had a criminal history, including burglary of a habitation, for which his probation had been revoked. The record shows that at the time of the termination hearing, he would remain incarcerated for at least two more years. Appellant Father had been ordered to participate in services, including random drug screening, and parenting and substance abuse counseling. He did not, however, complete his services, even though he was not incarcerated at the time the case began. The caseworker testified she tried to visit Appellant Father in prison; however, Appellant Father refused to see her because he was not feeling good on the day she went to visit. During the pendency of the case, Appellant Father had not regularly visited the children. Further, he did not have the ability to provide a safe environment for the children. The caseworker testified Appellant Father loved his children and "had a good relationship with his children" but the children were exposed to domestic violence between him and the mother:

He told me in the beginning of the case, when everything was going well, . . . he loved his children. He did have a very domestic violent relationship with [the mother], and you could tell. . . . [The mother] wouldn't speak when he was in the room. She would always have her head lowered. She wouldn't look at you eye to eye. She wouldn't do—if I called her, she wouldn't return my calls. He would return my calls. And that was through the beginning of the case all the way until we did the family plan of service and stuff. And then she just stopped all contact. So, any contact that I needed with her, I had to go through him and depend on if he would return the calls or not.

The children were initially placed with relative caregivers, Mr. and Mrs. Garcia. The placement fell apart, however, when Mr. Garcia left Mrs. Garcia to have an affair with the children's biological mother. Mrs. Garcia contacted the Department and asked for the children to be picked up because she was no longer able to care for them. The children are currently in a foster home in Brownsville, Texas, but the caseworker did not know if that would be a permanent placement. The Department does plan to keep the children together and to continue to try to find them a forever home. The children are close and bonded with each other.

In looking at all this evidence in the record in the light most favorable to the trial court's finding, we hold that the trial court could have reasonably formed a firm belief or conviction that termination of Appellant Father's parental rights was in the children's best interest. *See In re J.O.A.*, 283 S.W.3d at 344. Thus, the evidence is legally sufficient to support the trial court's best-interest finding.

With respect to factual sufficiency, there was evidence that Appellant Father had a good relationship with the children and that he loved them. However, there was also evidence that the children were afraid of Appellant Father because of inappropriate discipline and they did not feel safe at home due to drug use. Further, there was evidence that Appellant Father engaged in domestic violence toward the children's mother in the presence of the children, and he was involved in criminal activity, including burglary of a habitation, for which he was incarcerated. Also, the evidence showed he did not complete the services set forth in his service plan nor did he

regularly visit the children during the pendency of the case. Thus, in considering the entire record, including any disputed evidence, we conclude the evidence is factually sufficient to support the trial court's finding that termination of Appellant Father's parental rights was in his children's best interest. *See id.*

We affirm the trial court's order terminating Appellant Father's parental rights.

Karen Angelini, Justice